UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CRYSTAL BAXTER, O/B/O A.D.C.         CIVIL ACTION NO. 20-cv-1549

VERSUS         JUDGE ELIZABETH E. FOOTE

U S COMMISSIONER OF SOCIAL SECURITY    MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A.D.C. was born prematurely in 2007. He underwent surgery two days after birth for imperforate anus and stayed in the hospital for two months. His mother, Crystal Baxter ("Plaintiff") filed an application for Supplemental Security Income in July 2018, alleging disability due to history of imperforate anus with residual effects, attention deficit hyperactivity disorder ("ADHD"), and asthma. ALJ David Benedict held an evidentiary hearing and issued a decision that the child was not disabled within the meaning of the regulations. Tr. 21. The Appeals Council denied review (Tr. 1-4), making the ALJ's decision the final decision by the Commissioner.

Plaintiff filed this civil action to seek the limited judicial review that is allowed by 42 U.S.C. § 405(g). Plaintiff was represented by attorney Nina Coleman at the agency hearing, but she is now self-represented. She commenced this action with a two-page complaint, to which she attached various documents, some of which were not part of the agency record. She then filed a two-page brief and has filed several exhibits, including documents from teachers, test results, and prescriptions for new medications that were not

part of the agency record. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Relevant Evidence**

    **A. Hearing Testimony**

A hearing was held by videoconference on July 5, 2018. A.D.C. did not attend. Plaintiff's attorney represented that A.D.C. suffered from several congenital impairments, primarily imperforate anus. A.D.C. underwent surgery for this condition, but after surgery he continued to have both bladder and bowel incontinence, and he was (in 7th grade) wearing diapers/Depends for this condition. Tr. 32-33, 46. He was able to change the diapers himself. Tr. 46.

Counsel stated that A.D.C. also suffered from ADHD, asthma, spina bifida, and hip dysplasia. A.D.C. underwent surgery to correct the hip disorder. Even after the surgery, A.D.C. walked with a limp and used a walker daily. Tr. 33, 38.

Counsel stated that A.D.C. had a personal assistant who worked with him four hours a day, seven days a week to help him with homework and household activities. Tr. 33. The assistant kept a chart of the tasks A.D.C. was to complete every day. Tr. 60. A.D.C. also had a service dog to help him increase his mobility and assist him with anxiety. Tr. 33-34.

Plaintiff testified that A.D.C. was then in the 7th grade and attending regular classes, but in elementary school he had been in special education. Tr. 44. His reading and writing skills were below the appropriate level, and his math skills were "okay." Plaintiff stated

that A.D.C. had trouble maintaining attention and concentration. Tr. 48-49. He frequently fought with other students, and he did not have many friends at school. Tr. 49-50.

Plaintiff testified that A.D.C. had physical limitations because he could not run, and he was not able to play sports or participate in any extracurricular activities that were physical, such as karate, dancing or riding a bike. Tr. 45-46.

When asked about A.D.C.'s general mood, Plaintiff testified that he was depressed and angry because of his condition. He had been receiving children's counseling for his behavior, but at the time of the hearing, Plaintiff was waiting for a new counselor. Tr. 53-54. A.D.C. took Concerta for his ADHD, but Plaintiff did not feel that it helped him. Tr. 54.

A.D.C. had problems with his speech. He stuttered and did not use full sentences. Tr. 58. He experienced anxiety when people could not understand him, so it was hard for him to express himself. He was in speech therapy, and Plaintiff said she was looking for a new therapist. Tr. 59.

**B. Medical Evidence**

A.D.C. was born with imperforate anus. Tr. 395. He had a colostomy as an infant, but it was reversed. Tr. 456. He has suffered from incontinence problems and constipation. Tr. 394, 403, 408, 414, 422.

In October 2018, A.D.C. was seen by Tammy Bradford, A.P.R.N. Bradford noted that A.D.C. appeared to have a previously undiagnosed right congenital hip dysplasia. Tr. 451. An MRI performed in November 2018 revealed spina bifida occulata at the S1 level. Tr. 481. In December 2018, A.D.C. underwent right proximal femoral varus derotation

osteotomy and right acetabuloplasty with internal fixation. Tr. 506. In February 2019, A.D.C. visited Dr. Cary Mielke for a post-op appointment. Dr. Mielke noted that A.D.C. passed physical therapy and had "excellent pain control." Tr. 507. He believed that A.D.C. could be full weightbearing within one to two weeks. Tr. 579. A physical therapy progress note from February 15, 2019, noted that A.D.C. did not have pain but had some muscle soreness with therapy. Tr. 754.

Dr. Shantell Ceaser of Magnolia Medical Services performed a consultative physical evaluation on March 16, 2019. A.D.C. was in a wheelchair and said he could not stand or walk. He reported that his pain, 10/10 in severity, was always present and was not controlled by medication. Tr. 731. Dr. Ceaser wrote that her examination was "very limited" because A.D.C. told her that he was in "extreme pain" and asked her not to touch or examine him. She concluded, based on her examination and other objective evidence, that he required an assistive device for ambulation and could not walk/stand a full workday. He could carry less than 10 lb. objects with limitations, and he could respond appropriately to questions and remember instructions without difficulty. Tr. 733.

A.D.C.'s complaints to Dr. Ceaser of constant pain and an inability to walk are not consistent with progress notes taken just weeks later. In April 2019, Dr. Mielke stated that A.D.C. had a limp but was doing well overall. He was cleared to go back to gym but was not able to do a lot of running and jumping. Tr. 749. A progress note from a June 6, 2019 physical therapy session noted that A.D.C. had no complaints and was able to play basketball with no pain. Tr. 892.

A consultative psychological examination was performed by Dr. S. Webb Sentell on January 11, 2019. He opined that A.D.C.'s functional capacity was impacted by ADHD and asthma, as well as spina bifida, multiple developmental problems, and medical problems. He stated that A.D.C. had great difficulties in coping in age-appropriate environments and was easily distracted. He opined that A.D.C. was intellectually disabled in several areas of functioning and had motor functioning problems. A.D.C. was not able to respond to many of Dr. Sentell's assessment items in an age-appropriate manner. Tr. 500.

Dr. Gerald Dzurik and Dr. Lisette Constantin, the state agency medical consultants, did not examine A.D.C. but reviewed his medical records. They submitted a report in June 2019 that opined that A.D.C. was not disabled. They found that A.D.C.'s limitations in function were not as limiting as alleged by A.D.C.'s mother. Tr. 81. They also found that Dr. Ceaser's opinion was an overestimation of the severity of A.D.C.'s limitations. Tr. 82. They found that A.D.C.'s condition did result in some limitations in the ability to function, but those limitations were not severe enough to be considered disabling. Tr. 83.

**The ALJ's Findings**

A child is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or last a continuous period of at least one year. 42 U.S.C. §1382c(a)(3)(C)(i). The Commissioner has published regulations to implement that standard. They require a three-step evaluation process. 20 C.F.R. §416.924.

The first step is to determine whether the child has engaged in substantial gainful activity. If not, the evaluation continues to the second step, which involves a determination of whether the child has an impairment or combination of impairments that is "severe," meaning more than a slight abnormality that causes only minimal functional limitation. The third step involves a determination of whether the child's impairments meet, medically equal, or functionally equal in severity a listed impairment. §416.924(a)-(d). If so, and the twelve-month durational requirement is met, the child is disabled. If not, the child is not disabled. §416.924(d)(1) and (2).

The ALJ found that A.D.C.'s claim met the first two steps of the evaluation because (1) the child had not been working and (2) he suffered from severe impairments in the form of spina bifida occulata at S1; effects of right proximal femoral varus de-rotation osteotomy and right acetabuloplasty with internal fixation; status-post right hip dysplasia; congenital imperforate anus; asthma; ADHD; speech delay; fine motor delay; adjustment disorder; learning disorder; and defiant behavior. (Tr. 15). The ALJ found at step three that A.D.C.'s impairments did not meet or medically equal a listed impairment. None of these findings are directly contested on appeal.

The ALJ then proceeded to determine whether A.D.C. had impairments that functionally equaled a listed impairment. A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

Page 6 of 15

    (4) moving about and manipulating objects

    (5) caring for yourself

    (6) health and physical well-being.

§416.926a(b)(1).

The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. An ALJ will make a finding of functional equivalence only if the child has "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A marked limitation is one that will seriously interfere with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation will interfere "very seriously" with these abilities. 20 C.F.R. 416.926a(e)(3). When deciding whether a child has such a limitation, the ALJ must consider all of the child's impairments, whether or not they are considered severe, as well as the interactive and cumulative effects of any impairments on any affected domain. 20 C.F.R. § 416.926a(a) & (c).

The ALJ found that A.D.C. had less than a marked limitation in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, the ability to care for himself, and health and physical well-being. He found that A.D.C. had a marked limitation in moving about and manipulating objects. The ALJ concluded the child was not disabled because there were not marked limitations in two domains or a severe limitation in any domain.

**Issues on Appeal**

The Scheduling Order (Doc. 10) required that the Plaintiff's brief include a statement of errors. The order explained:

> "This statement shall set forth in separate numbered paragraphs the specific errors committed at the administrative level which entitle plaintiff to relief. The court will consider only those errors specifically identified in the briefs. A general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court."

Plaintiff, who is self-represented, filed a two-page letter brief with various records attached. The only appellate issue that Plaintiff appears to have specifically identified is whether the ALJ erred in finding that A.D.C. had only a "marked limitation" in the domain of health and physical well-being. Plaintiff states in her brief that this finding should be reviewed.

**Standard of Review; Substantial Evidence**

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff stated in her brief: "This marked limitation in the domain of Health and Physical Well-Being and that finding should be reviewed which this finding was not addressed in the decision." Before addressing that domain, it is necessary to consider the ALJ's assessment of the domain of moving about and manipulating objects. That is because the health and physical well-being regulation states that the agency will consider the cumulative effects of impairments and their treatments on functioning "that we did not consider in paragraph (j) of this section." 20 C.F.R. § 416.926a(l). Paragraph (j) is the regulation regarding moving about and manipulating objects.

In evaluating the domain of moving about and manipulating objects, "we consider how you move your body from one place to another and how you move and manipulate things. These are called gross and fine motor skills." Section 416.926a(j). A.D.C. was 12 when the ALJ's decision issued, which made him an adolescent under the regulations. The regulation provides:

> As an adolescent, you should be able to use your motor skills freely and easily to get about your school, the neighborhood, and the community. You should be able to participate in a full range of individual and group physical fitness activities. You should show mature skills in activities requiring eye-hand coordination, and should have the fine motor skills needed to write efficiently or type on a keyboard.

Section 416.926a(j)(2)(v). The ALJ noted Plaintiff's complaints of extreme pain during the evaluation performed by Dr. Ceaser, but he discounted such extreme pain and inability to ambulate because it was not reflected in the most recent progress notes. They showed that A.D.C. had progressed after his December 2018 hip surgery from a walker to a cane

to being cleared for gym class and then playing basketball with little pain. That progress took place over the course of about five months. By May 2019, A.D.C. reported no pain in his right hip and leg and said he was in summer camp and playing sports. He said in June 2019 that he had no complaints and was able to play basketball without pain. The ALJ considered all of this evidence and determined that "while the evidence supports a marked limitation in moving about, an extreme limitation is not warranted in light of the decrease in pain reported with physical therapy and the ability to play basketball as of the summer after the surgery." Tr. 19. This was an entirely reasonable assessment and weighing of the relevant evidence, and there is no specific challenge to the ALJ's finding on this domain.

The challenge at issue is in the domain of health and physical well-being. As noted, this domain excludes any limitations already addressed under the domain of moving about and manipulating objects. The regulation gives examples of physical or mental disorders that may make it difficult for a person to perform activities independently or effectively. Those problems include generalized weakness, fatigue, allergic reactions, pain, or bladder or bowel incontinence. The regulations state that the agency will consider medications and their side effects, whether any illness is chronic with stable symptoms or episodic, and the age and developmental stage of the claimant. Section 416.926a(l)(1)-(4).

The ALJ noted that A.D.C. has a congenital imperforate anus and that his mother testified that he uses Depends on a daily basis and changes them twice a day at school, but he has help at home. A.D.C. was prescribed personal care services, which his mother said he received four hours a day, seven days a week. Plaintiff testified that the assistant helps

remind A.D.C. to do his chores using a schedule, and A.D.C. performs tasks such as laundry, homework, and food preparation. The ALJ found that some of the allegations with respect to the imperforate anus "are not clearly supported, and the evidence as a whole does not establish marked limitations in the domain of caring for self or in health and physical well-being." Tr. 19. As noted above, the regulations state that a marked limitation is one that will seriously interfere with the child's ability to independently initiate, sustain, or complete activities. A.D.C.'s incontinence and other health issues are certainly serious and affect his abilities to function. But he attends regular classes, plays basketball and other sports, and is able to complete his homework and other household chores with guidance from his caretaker. Reasonable persons may debate the ALJ's assessment of this domain, but there is substantial evidence to support his conclusion and a good faith basis to find that the limitation, though significant, does not "seriously interfere" with A.D.C.'s ability to initiate, sustain, or complete activities. The ALJ's decision should, therefore, be affirmed.

**New Evidence**

The ALJ's decision issued April 1, 2020. Plaintiff has submitted copies of various medical records and other reports that were generated after that date and that are not in the administrative record. Attached to her brief (Doc. 16) is a personal care services statement of need dated January 15, 2021, a personal care assessment form indicating a need for service beginning in February 2021, and a medical and functional capacity assessment by Dr. Kevin Boykins dated December 6, 2020. Dr. Boykins found an extreme limitation in the ability to attend and complete tasks (because incontinence can make functioning on

task more challenging), and an extreme limitation in caring for yourself (because A.D.C. needs assistance for his incontinence), and a marked limitation in health and physical well-being (with no explanation). Plaintiff also submitted a December 15, 2020 assessment form completed by Derek Harris, certified pediatric nurse practitioner. Harris stated that his clinic first saw A.D.C. in March 2014. Findings included marked limitations in moving about and manipulating objects, caring for yourself, and health and physical well-being. Plaintiff also submitted school records, a note of a new medication for ADHD, and a November 2021 speech therapy evaluation that found a moderate stuttering problem. Docs. 20 & 21.

The court may not consider new evidence as a basis to find that the ALJ's decision was lacking in support by substantial evidence. The court may only consider such submissions to determine whether the claimant has demonstrated an entitlement to remand to the agency for consideration of the new evidence. The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sentence 6). For new evidence to be material, there must exist the reasonable probability that, if it had been presented to the Commissioner, it would have changed the outcome. Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994). Implicit in the materiality requirement is that the new evidence must relate to the time period for which benefits were denied, and that it not concern evidence of later-acquired disability or subsequent

deterioration of a previously non-disabling condition. Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987).

All of the evidence submitted by Plaintiff is dated after the date of the ALJ's decision, and none of it states that it assesses A.D.C.'s condition prior to April 1, 2020 as opposed to his condition at the date the report was generated. Remand has been denied in similar circumstances. Ferrari v. Astrue, 435 Fed. Appx. 314 (5th Cir. 2010) (medical source functional report rendered eight months after the ALJ hearing did not relate to claimant's condition at the time of the application or hearing; remand unwarranted); Hunt v. Barnhart, 159 Fed. Appx. 569 (5th Cir. 2005) (new medical reports related to condition after the period for which benefits were denied; they failed to meet the materiality requirement for remand).

Plaintiff has also not attempted to articulate good cause for her failure to incorporate this or similar evidence in the record during the administrative process. In Bradley, the Fifth Circuit affirmed a denial of remand because, among other reasons, the plaintiff did "not attempt any showing of good cause, other than the fact that [a physician's] letter is of recent origin, for the failure to incorporate this evidence into the prior administrative record." Id. 809 F.2d at 1058. The Commissioner raised the lack of a good cause showing in her brief. Plaintiff filed a reply afterwards but still did not attempt to make a showing of good cause. Remand is not warranted under the statutory provision.

**Conclusion**

A.D.C. suffers from serious health problems, and the ALJ considered the relevant evidence and reasonably found from the relevant evidence that the child did have

significant limitations, but not so significant as to meet the definition of disabled under the statutes and regulations. Plaintiff has submitted new evidence that suggests A.D.C.'s limitations may be greater than what was assessed by the ALJ, but all of those records were generated after the date of the relevant decision. Plaintiff has not made an adequate showing of materiality or good cause that would warrant a remand to the agency to consider the new evidence. Plaintiff may wish to consider filing a new application, if she has not already done so, supported by the old records plus the new records she has gathered. The agency should then be able to properly consider the new evidence.

Accordingly,

It is recommended that the Commissioner's decision to deny benefits be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of June, 2022.

Mark L. Hornsby
U.S. Magistrate Judge